UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAHIM McWILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 53 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| COOK COUNTY, TOM DART, RICKY L. COOPER, | ) | |
| LOWELL L. DAHMEN, WILLIAM M. CROOK, | ) | |
| GERARD J. MEYER, JASON B. CIANCIARULO, and | ) | |
| DR. NAGIB M. ALI, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Rahim McWilliams brings federal and state law claims arising from injuries he allegedly

sustained while detained at Cook County Jail.  Doc. 73.  The case was reassigned to the

undersigned judge's calendar earlier this year.  Doc. 83.  Seven of the eight defendants move

under Civil Rule 12(b)(6) to dismiss the claims against them.  Doc. 79.  The motion is granted in

part and denied in part.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative

complaint's well-pleaded factual allegations, though not its legal conclusions.  *See Zahn v. N.*

*Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016).  The court must also consider

"documents attached to the complaint, documents that are critical to the complaint and referred

to in it, and information that is subject to proper judicial notice," along with additional facts set

forth in McWilliams's brief opposing dismissal, so long as those additional facts "are consistent

with the pleadings."  *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013)

(internal quotation marks omitted).  The facts are set forth as favorably to McWilliams as those

materials allow.  *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016).  In setting forth

those facts at the pleading stage, the court does not vouch for their accuracy.  *See Jay E. Hayden*

*Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

### A.    Factual Background

On January 30, 2013, while a pre-sentencing detainee at Cook County Jail, McWilliams

was forced to walk through a basement hallway flooded with "several inches" of water to get to a

court appearance.  Doc. 73 at ¶¶ 1, 48, 51, 53, 58.  "[W]orkers" were "attempting unsuccessfully

to clear the water from the walkway."  *Id.* at ¶ 57.  In response to detainees' complaints that

traversing the hallway would be dangerous, jail personnel threatened to revoke "basic privileges"

if they refused to proceed.  *Id.* at ¶¶ 55-56.  McWilliams's hands were cuffed behind his back,

and he was wearing jail-issued slip-on shoes "with a flat sole devoid of grip, particularly under

such conditions."  *Id.* at ¶¶ 58-59.

As he "attempt[ed] to walk up a gradual incline in the hallway that had standing water of

several inches," McWilliams slipped and fell backward, hitting his right hand, right shoulder,

and head.  *Id.* at ¶¶ 60-62.  He "could not stand up by himself," so an officer pulled him up.  *Id.*

at ¶ 63.  McWilliams told the officer that he was in pain and "seeing stars" and needed medical

attention, but the officer told him to continue to his court hearing and that treatment would be

considered later.  *Id.* at ¶¶ 64-65.

By the time McWilliams arrived at a holding area to await his hearing, his right hand was

swollen and numb, and he had a knot on his head.  *Id.* at ¶¶ 66-68.  Worried that he had broken

his hand, McWilliams raised his concerns with another officer, who told him that he needed to

attend his hearing before receiving medical treatment.  *Id.* at ¶ 69.  McWilliams then was

required to wait with his injured hand and soaked uniform for up to ninety minutes before his

hearing.  *Id*. at ¶ 70.  His repeated requests for help and to speak with a supervisor were met with the same answer: court first, medical treatment later.  *Id*. at ¶ 72.  After his hearing, he had to wait for a shift change before being taken to Cermak Hospital.  *Id*. at ¶ 76.

At Cermak, Defendant Dr. Nagib M. Ali diagnosed McWilliams with a broken hand and told him that he would grant a "medical hold" preventing his transfer to another facility "until his injuries were properly treated."  *Id*. at ¶ 79.  Ali "stated that proper treatment was unavailable at [Cermak] because of limited resources, so [he] fashioned … a hand-made, plaster cast … without setting the bone" and told McWilliams that he needed to see a specialist.  *Id*. at ¶¶ 80-81.

Two days later, McWilliams was transferred to Stateville Correctional Center.  *Id*. at ¶ 82.  There, officers and nurses had to recast his plaster cast every two to three days.  *Id*. at ¶ 83. One-and-a-half to two months after his injury, and after a second transfer, McWilliams was finally sent to a specialist, who determined that "too much time had passed since the injury, and that it was too late to fix it without re-breaking and re-setting the hand, which would require complex surgery that the prison would not approve."  *Id*. at ¶¶ 84-88.

During this time frame, McWilliams filed four grievances, including one with Cook County Jail the day of his injury.  *Id*. at ¶¶ 34-47.  He also sent a letter to the Jail in February 2013, forwarding a second grievance he had submitted to Stateville.  *Id*. at ¶¶ 36-37.

**B.      Procedural Background**

On January 5, 2015, McWilliams filed his original complaint *pro se*, along with an application to proceed *in forma pauperis*.  Docs. 1, 3.  He named as defendants the "Department of Cook County Jail," "N.R.C. Stateville CC," and "Illinois Department of Correction."  Doc. 1 at 1.  In the "title" and "place of employment" fields for "Department of Cook County Jail," he listed "Doctor & correctional officers" and "Health care unit & division one & five."  *Id*. at 2.

On January 27, 2015, McWilliams filed an amended complaint, naming the same defendants but expanding on the "title" and "place of employment" fields for "Department of Cook County Jail" to include "Director/Doctor/Correctional officers" employed by "Department of Cook County Jail/Cermack healthcare/Cook County Jail." Doc. 4 at 3.

The court denied McWilliams's *in forma pauperis* application, Doc. 5 (Der-Yeghiayan, J.), and also his renewed application, Doc. 9 (Der-Yeghiayan, J.). The Seventh Circuit vacated and remanded. *McWilliams v. Cook Cnty.*, 845 F.3d 244 (7th Cir. 2017). On remand, the court granted McWilliams's *in forma pauperis* application and recruited counsel, who has discharged his obligations admirably. Doc. 40 (Der-Yeghiayan, J.). On April 28, 2017, McWilliams filed his second amended complaint, naming as defendants "Cook County, Thomas J. Dart (the Sheriff of Cook County) and John Doe Nos. 1-22, employees and officials of Cook County Sheriff's Department, Cermak Health Services, the Illinois Department of Corrections, and/or Wexford Health Services, Inc." Doc. 56.

After conducting discovery to identify the John Does, McWilliams filed his third amended complaint, which is the operative complaint here. Doc. 73. That complaint again names Cook County and Dart as defendants, and it adds Commander Ricky L. Cooper, Lieutenant Lowell L. Dahmen, Sergeant William M. Crook, Sergeant Gerard J. Meyer, Sergeant Jason B. Cianciarulo, and Ali. The complaint asserts claims under 42 U.S.C. § 1983 and state law based on the alleged conditions of McWilliams's confinement, his alleged injury, and the alleged failure to provide adequate medical care.

## Discussion

Cook County, Dart, Ali, Meyer, Cianciarulo, Crook, and Dahmen (but not Cooper) move to dismiss the claims against them. Docs. 79, 94. The motion asserts five grounds for dismissal.

First, Defendants contend that the § 1983 claims against the defendants not named until the third

amended complaint are barred on limitations grounds. Doc. 79 at 3-6. Second, Defendants

argue that McWilliams fails to plead sufficient facts to maintain a § 1983 claim based on the

flooded hallway. *Id*. at 7-8. Third, Defendants contend that the Illinois Tort Immunity Act

("TIA"), 745 ILCS 10/1-101 *et seq.*, shields them from liability on the state law claims. Doc. 79

at 8-9. Fourth, Dart argues that certain claims against him should be dismissed because the

complaint fails to allege facts sufficient to establish that he was personally involved and because

he is not responsible for detainees' medical treatment. *Id*. at 9-11. Fifth, Ali argues that

McWilliams fails to state a plausible claim against him for providing inadequate medical

treatment. *Id*. at 11-13.

## I.       Statute of Limitations for the § 1983 Claims

Defendants first contend that the § 1983 claims against the six individual defendants not

named until the third amended complaint are time-barred. Doc. 79 at 3-6. "When a defendant

charges noncompliance with the statute of limitations, dismissal under Rule 12(b)(6) is irregular,

for the statute of limitations is an affirmative defense." *Chi. Bldg. Design, P.C. v. Mongolian

House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014) (brackets and internal quotation marks omitted).

Because "complaints need not anticipate and attempt to plead around defenses," *United States v.

N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004), dismissal on limitations grounds is appropriate

only when it is clear from the face of the complaint that the claim is time-barred, *see Chi. Bldg.

Design*, 770 F.3d at 614.

A two-year statute of limitations governs the § 1983 claims. *See Woods v. Ill. Dep't of

Children & Family Servs.*, 710 F.3d 762, 768 (7th Cir. 2013). Defendants concede that

McWilliams filed the original and first amended complaints within the limitations period.

Doc. 94 at 3.  Defendants argue, however, that the § 1983 claims against the defendants newly named in the operative complaint are time-barred because they were first named more than four years after McWilliams's alleged injury.  Doc. 79 at 3.

The limitations issue turns on whether the claims against those defendants relate back to the initial complaint, or even to the first amended complaint, under Rule 15(c)(1)(C).  The Rule provides that an amended complaint relates back to the date of an earlier complaint when

> the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).  Defendants do not argue that the new defendants suffered prejudice within the meaning of Rule 15(c)(1)(C)(i), so only Rule 15(c)(1)(C)(ii) is at issue.

For some time, the Seventh Circuit adhered to the so-called John Doe rule, which provided that "'relation back' on grounds of mistake concerning the identity of the proper party does not apply where the plaintiff simply lacks knowledge of the proper defendant."  *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006) (some internal quotation marks omitted).  The landscape changed with *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010), which held that "relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading."  *Id*. at 541.  As the Seventh Circuit later explained, *Krupski*

> changed what we and other courts had understood … to be the proper standard for deciding whether an amended complaint relates back to the date of the filing of the original complaint.  We had thought the focus should be on what the plaintiff knew or should have known … .

> … The only two inquiries that the district court is now permitted to make in deciding whether an amended complaint relates back to the date of the original one are, first, whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant; and second, whether, even if so, the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself.

*Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 559-60 (7th Cir. 2011).

The key question here is whether the John Doe rule survived *Krupski*. The Seventh Circuit has not expressly addressed this question, and courts in this District have reached opposite conclusions. *See Cheatham v. City of Chicago*, 2016 WL 6217091, at *3 (N.D. Ill. Oct. 25, 2016) ("Courts in this district disagree on whether lack of knowledge of a defendant's identity counts as a mistake post-*Krupski*.") (citing cases); *White v. City of Chicago*, 2016 WL 4270152, at *17 (N.D. Ill. Aug. 15, 2016) (citing cases). The undersigned judge previously concluded that the John Doe rule did not survive *Krupski*, *see Clair v. Cook Cnty.*, 2017 WL 1355879, at *3-4 (N.D. Ill. Apr. 13, 2017), and adheres to that view here. *Accord, e.g.*, *Bagley v. City of Chicago*, 2018 WL 3545450, at *3 (N.D. Ill. July 24, 2018) (holding that the John Doe rule did not survive *Krupski*); *Hawks v. Gade*, 2018 WL 2193197, at *4 (N.D. Ill. May 14, 2018) (same); *Haroon v. Talbott*, 2017 WL 4280980, at *6 (N.D. Ill. Sept. 27, 2017) (same).

Under *Krupski* and *Joseph*, the court must limit its inquiry under Rule 15(c)(1)(C)(ii) to what the new defendants knew or should have known. *See Krupski*, 560 U.S. at 553-54 ("[T]he question under Rule 15(c)(1)(C)(ii) is what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant."); *Joseph*, 638 F.3d at 559-60 (limiting analysis under Rule 15(c)(1)(C)(ii) to "whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in

addition to suing the named defendant"). McWilliams argues that his grievances, original complaint, and first amended complaint all provided enough detail about the events, and the jail and Cermak officials involved, that the newly added defendants knew or should have known that he intended in the complaint and first amended complaint to sue them. Doc. 93 at 9-10. Because nothing in the pleadings compels a contrary conclusion, the court cannot resolve the Rule 15(c)(1)(C)(ii) issue in the new defendants' favor on a Rule 12(b)(6) motion. *See Hawks*, 2018 WL 2193197, at *4-5 (denying a motion to dismiss on this ground, and noting that evidence "of what the newly added defendants knew about a plaintiff's lawsuit before they were added … is rarely before the Court on a motion to dismiss"); *Clair*, 2017 WL 1355879, at *4 (similar); *Klinger v. City of Chicago*, 2017 WL 736895, at *6 (N.D. Ill. Feb. 24, 2017) (holding that the defendant "is not entitled to dismissal of the complaint at this stage of the proceedings on the basis of the statute of limitations having run" because what the defendant "knew or should have known … cannot in any event be answered on the pleadings"); *Ryan v. City of Chicago*, 2016 WL 6582570, at *2 (N.D. Ill. Nov. 7, 2016) ("Because these developments require the Court to consider what the Unknown Officers knew concerning Ryan's suit, the Court denies the City's motion [to dismiss] at this time and awaits … a more developed record before making a determination on the statute of limitations issues raised here.").

## II.     Section 1983 Conditions of Confinement Claim

McWilliams alleges under § 1983 that Defendants were deliberately indifferent to a dangerous condition of confinement—the flooded hallway—in violation of the Fourteenth Amendment's Due Process Clause. Doc. 73 at ¶¶ 111-21. Defendants argue that this claim should be dismissed because the alleged condition was not sufficiently dangerous to give rise to a constitutional violation. Doc. 79 at 7-8. They further argue that they cannot have been

deliberately indifferent because "workers" were "on the site attempting to resolve the flood issues" at the time of McWilliams's injury. *Ibid*.

Because McWilliams was a pre-sentencing detainee and not an inmate, his conditions of confinement claim arises under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause, which under Seventh Circuit law applies only to prisoners who have been convicted and sentenced. *See Lewis v. Downey*, 581 F.3d 467, 474 (7th Cir. 2009) (holding that a pre-sentencing detainee's "Eighth Amendment rights had not yet vested," making "his status … analogous to that of a pretrial detainee"). That distinction had long been of little consequence, as the Seventh Circuit for quite some time "typically assessed pretrial detainees' [due process] claims under the Eighth Amendment's standards, reasoning that pretrial detainees are entitled to at least that much protection." *Miranda v. Cnty. of Lake*, __ F.3d __, 2018 WL 3796482, at *9 (7th Cir. Aug. 10, 2018).

The Supreme Court disturbed that state of affairs in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), which held that the due process standard for excessive force claims by pretrial detainees is less demanding than the Eighth Amendment standard for excessive force claims by convicted inmates. *See id*. at 2475. The Seventh Circuit recently held in *Miranda* that *Kingsley*'s logic applies as well to medical treatment claims. *Miranda*, 2018 WL 3796482, at *11 ("[M]edical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in *Kingsley*."). In turn, *Miranda*'s logic reaches the broader genus of conditions of confinement claims, of which medical treatment claims are merely a species. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) ("[W]e see no significant distinction between claims alleging inadequate medical care and those alleging inadequate 'conditions of confinement.' Indeed, the medical care a prisoner receives is

just as much a 'condition' of his confinement as the food he is fed, the clothes he is issued, the temperature he is subjected to in his cell, and the protection he is afforded against other inmates."); *Miranda*, 2018 WL 3796482, at *9-10 (finding persuasive a Second Circuit case extending *Kingsley* to conditions of confinement cases, and citing *Wilson* for the proposition that "medical care is a condition of confinement"); *id*. at *11 ("[T]he Supreme Court has been signaling that courts must pay careful attention to the different status of pretrial detainees. … We see nothing in the logic the Supreme Court used in *Kingsley* that would support this kind of dissection of the different types of claims that arise under the Fourteenth Amendment's Due Process Clause.").

Under *Kingsley* and *Miranda*, then, a plaintiff states a Fourteenth Amendment conditions of confinement claim by alleging that (1) the defendant "acted purposefully, knowingly, or perhaps even recklessly" and (2) the defendant's conduct was objectively unreasonable. *See Miranda*, 2018 WL 3796482, at *12. Unlike in the Eighth Amendment context, deliberate indifference—the defendant's subjective awareness that her conduct was unreasonable—is not required. *See id*. at *9-12.

*Miranda* had not yet been decided when the parties briefed this motion, so they did so on the understanding that McWilliams needed to allege deliberate indifference to proceed with his conditions of confinement claim. Doc. 79 at 7-8; Doc. 93 at 11-13; Doc. 94 at 4. As shown below, McWilliams states a claim even under the Eighth Amendment's deliberate indifference standard, so it necessarily follows that he also states a claim under the Fourteenth Amendment's less demanding objective unreasonableness standard. *See Miranda*, 2018 WL 3796482, at *9.

### A.    Hazardous Condition

The Constitution protects detainees from hazardous conditions of confinement.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Pyles v. Fahim*, 771 F.3d 403, 408-09 (7th Cir. 2014).  To state such a claim, McWilliams must allege that Defendants exposed him to "a … condition that presented an objectively, sufficiently serious risk of harm."  *Pyles*, 771 F.3d at 409.  "Sufficiently serious" in this context means that the condition posed "a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834.  "Prisons are not required to provide a maximally safe environment, but they must address easily preventable, observed hazards that pose a significant risk of severe harm to inmates."  *Anderson v. Morrison*, 835 F.3d 681, 683 (7th Cir. 2016) (internal quotation marks and citation omitted).

Defendants correctly observe that "slippery surfaces and shower floors in prisons, *without more*, cannot constitute a hazardous condition of confinement."  *Pyles*, 771 F.3d at 405, 410 (emphasis added) (holding that stairs located near showers that became "dangerously slick from water tracked by the inmates' shower shoes" were not sufficiently serious under the Eighth Amendment).  But McWilliams has alleged more.  A hallway flooded with "several inches of water" and used to access the courthouse, Doc. 73 at ¶¶ 51, 58, is a far cry from a wet staircase used to access the showers.  Add to the flood the facts that McWilliams's shoes were not suited for the terrain, that his hands were cuffed behind his back, and that the hallway contained a gradual incline, *id.* at ¶¶ 58-60, and this case looks much like *Anderson*, where the Seventh Circuit held that a prisoner stated an Eighth Amendment claim by alleging that he was forced "to walk handcuffed and unaided down stairs needlessly strewn with easily removable milk, food, and garbage."  835 F.3d at 683 (distinguishing *Pyles* on the ground that the stairs there "were

unavoidably wet" because "the water on inmates' shower shoes inevitably tracked onto the exit stairway").

To be sure, this case differs from *Anderson* in one respect: There, the substances that made the stairs dangerous were "easily removable," and the defendants had simply failed to remove them. *Ibid.* Here, by contrast, workers "attempt[ed] unsuccessfully" to drain the hallway, Doc. 73 at ¶ 57, and Defendants suggest that there was no viable alternative route because "the normal pathway to the courthouse" had been condemned, Doc. 94 at 4; Doc. 73 at ¶¶ 49-51. Nonetheless, McWilliams adequately alleges that the dangerous condition was "easily preventable," *Anderson*, 835 F.3d at 683, for even if the water could not have been drained, "several" of the detainees "complained of the dangerous conditions" and "suggested a different route." Doc. 73 at ¶¶ 54-55. McWilliams also alleges that Defendants could have mitigated the danger by "providing [the detainees] with better shoes for the conditions or allowing them to keep their hands in front[] for additional stability." *Id.* at ¶ 116. Thus, with his allegations deemed true and all reasonable inferences drawn in his favor, McWilliams alleges a sufficiently serious condition for his conditions of confinement claim.

### B.     Subjective Component

To state a viable claim under the deliberate indifference standard—and if he does that, he certainly can meet the less demanding due process standard—McWilliams also must allege that Defendants "acted with a sufficiently culpable state of mind." *Pyles*, 771 F.3d at 409. One way to do so is by "asserting that the [defendant] knew about the hazardous condition and turned a blind eye to it." *Ibid.* (internal quotation marks omitted).

Defendants incorrectly argue that their attempt to drain the hallway precludes a finding of deliberate indifference. Properly understood, the hazardous condition underlying McWilliams's

claim is not the mere fact of the flood, but rather that he was forced to walk through it in tractionless shoes, on an incline, with his hands cuffed behind his back. The alleged deliberate indifference occurred when, faced with detainees' concerns about the danger and suggestions of a different route, Defendants ordered them to continue through the hallway or lose basic privileges. Doc. 73 at ¶¶ 53-58, 116. It is accordingly not enough that workers were attempting to drain the water. If it were, then an official who ordered prisoners into a burning building would not be deliberately indifferent so long as firefighters were fighting the fire.

In sum, McWilliams has stated a § 1983 conditions of confinement claim.

### III. Immunity for State Law Claims

Immunity under the TIA operates as an affirmative defense, so Defendants "bear the burden of properly raising and proving their immunity under the Act." *Salvi v. Vill. of Lake Zurich*, 66 N.E.3d 894, 908 (Ill. App. 2016). Section 2-202 of the TIA provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202; *see Munizza v. City of Chicago*, 583 N.E.2d 561, 565 (Ill. App. 1991) (noting that immunity does not extend to "(1) [a] public employee's acts based on corrupt or malicious motives or (2) [a] public employee's willful and wanton acts"); *Oleszczak ex rel. C.O. v. Ill. Dep't of Children & Family Servs.*, 2018 WL 3428102, at *8 (N.D. Ill. July 16, 2018). Section 4-105 of the TIA provides immunity from liability "for injury proximately caused by the failure of [a public] employee to furnish or obtain medical care for a prisoner in his custody," but it too contains an exception for willful and wanton conduct. 745 ILCS 10/4-105 ("[T]his Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions

that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care.").

The TIA defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. As a general rule, "[w]hether conduct is willful and wanton is a factual question." *Carter v. Simpson*, 328 F.3d 948, 951 (7th Cir. 2003); *see also Chelios v. Heavener*, 520 F.3d 678, 693 (7th Cir. 2008). Still, a claim that depends on the alleged conduct's being willful and wanton may be dismissed if the pleadings make clear that the conduct was not willful and wanton. *See Doe v. Calumet City*, 641 N.E.2d 498, 506 (Ill. 1994) (holding that allegations of willful and wanton conduct against defendants who did "nothing more than follow[] the orders of their superior officer" did not survive a motion to dismiss), *overruled in other part by Ries v. City of Chicago*, 950 N.E.2d 631 (Ill. 2011).

Defendants argue that the TIA immunizes them from liability on the state law claims because McWilliams "does not provide any facts to support that Defendants acted willfully and wantonly." Doc. 79 at 8-9. That argument is incorrect. The gravamen of this suit is that Defendants, disregarding complaints about the danger, forcibly marched McWilliams through a flooded hallway and up an incline, with his hands cuffed behind his back and while he was wearing tractionless shoes, and that when he fell and suffered injuries, they ignored his need for medical care, failing even to have his broken hand set. At this stage of the case, the court must credit those allegations, which implicate the TIA's willful and wanton conduct exception. *See Payne ex rel. Hicks v. Churchich*, 161 F.3d 1030, 1045-46 (7th Cir. 1998) (holding that allegations "that the Sheriff knew that conditions in the city jail created a substantial risk of self-

harm to [the plaintiff] and that the Sheriff nevertheless ordered his Deputy to place the prisoner

there" satisfied the TIA's willful and wanton standard); *Doe*, 641 N.E.2d at 505-06 (holding that

the plaintiffs stated a claim for willful and wanton conduct by alleging that the defendant police

officer was "in control at the scene," "was aware" of facts establishing that the plaintiffs were in

danger, and "should have acted under these circumstances to protect [the plaintiffs], but did not

because of fear of liability for property damage") (internal quotation marks omitted); *see also*

*Pittman ex rel. Hamilton v. Cnty. of Madison*, 746 F.3d 766, 781 (7th Cir. 2014) ("The willful

and wanton standard is remarkably similar to the deliberate indifference standard.") (internal

quotation marks omitted).

## IV.     Dart

Dart argues that certain claims against him should be dismissed because McWilliams

fails to plead sufficient facts to support an inference that he was personally responsible for

McWilliams's injuries, Doc. 79 at 9-10, and because Dart is not responsible for detainees'

medical treatment, which is provided by Cermak and not Cook County Jail, *id*. at 10.

### A.     Section 1983 Claims

Section 1983 creates a cause of action based on personal liability and predicated upon

fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated

in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005)

(internal quotation marks omitted). The mere fact that Dart holds a supervisory position is

insufficient to establish liability, as the *respondeat superior* doctrine does not apply to § 1983

claims. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). "Supervisors who are

merely negligent in failing to detect and prevent subordinates' misconduct are not liable."

*Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (brackets and internal quotation

marks omitted).  To be held liable under § 1983, "supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.  They must in other words act either knowingly or with deliberate, reckless indifference."  *Ibid.* (internal quotation marks omitted); *see also Sides v. City of Champaign*, 496 F.3d 820, 827 (7th Cir. 2007) (similar).  Some causal connection or affirmative link between the complained-of action and the official sued is necessary for § 1983 recovery.  *See Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003).

The complaint makes no specific allegations about Dart's knowledge or conduct; it alleges only that Dart, as the Cook County Sheriff, "is responsible for the Cook County Department of Corrections and the County's jail facilities."  Doc. 73 at ¶ 31.  In his brief opposing dismissal, McWilliams argues that "[i]t is inconceivable that the Sheriff who operates the facility is completely unaware of the general conditions of the jail."  Doc. 79 at 14.  Maybe so, but the key question here is Dart's involvement in the alleged conditions and events: the flooded hallway, McWilliams's injury, and his subsequent medical treatment.  *See Hildebrandt*, 347 F.3d at 1039.  General allegations that Dart is responsible for jail facilities and not "completely unaware" of jail conditions are insufficient to plausibly suggest that he was personally involved in, or even aware of, the alleged circumstances giving rise to McWilliams's claims.  *See Sanville*, 266 F.3d at 740 (holding that the plaintiff failed to state a § 1983 claim against a warden and deputy warden because none of her allegations "suggest[ed] that the wardens were personally responsible for any deprivation" or that "they 'turned a blind eye' to any particular conduct of the remaining defendants"); *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000) ("Although Zimmerman alleges that Hanks and Cohn oversaw others or established wrongful policies, there are no allegations that either of them was personally

involved in the constitutional wrongdoing. Therefore, the claims against them were properly dismissed.").

The cases McWilliams cites are not to the contrary. In *Despenza v. Sheriff of Cook County*, 2014 WL 1246298 (N.D. Ill. Mar. 24, 2014), the plaintiff alleged that "Dart was personally involved in the formulation and implementation of policies involving wheelchair detainees and that he failed to implement such policies," directly resulting in the alleged constitutional deprivation. *Id*. at *1. Here, by contrast, McWilliams relies on vague allegations that Dart was generally responsible for jail conditions, offering no specific link between Dart and his injury. Doc. 93 at 13-15. And while the court in *Crockwell v. Dart*, 2013 WL 6796788 (N.D. Ill. Dec. 23, 2013), relied on allegations about Dart's general knowledge of jail conditions in denying a motion to dismiss, it did so only because that knowledge mapped onto the plaintiff's claim of deliberate indifference to "systemic conditions" that caused his injury. *Id*. at *3; *see also ibid*. ("[Plaintiff] also alleges that Dart learned from [earlier] litigation about the need for handicap-accessible toilets in Division 2."); *Smith v. Clinton Cnty. Sheriff*, 2016 WL 6143041, at *3 (S.D. Ill. Oct. 21, 2016) ("Personal involvement of senior jail officials may be inferred where the plaintiff alleges potentially systemic, as opposed to clearly localized, constitutional violations.") (internal quotation marks omitted). This case, by contrast, does not present a systemic conditions claim. Finally, McWilliams cites *Armstrong v. Squadrito*, 152 F.3d 564 (7th Cir. 1998), for the proposition that individual liability may flow from a deliberately indifferent policy. Doc. 93 at 14-15. But he nowhere alleges that his injury resulted from "a deliberately indifferent policy" that Dart "personally devised," 152 F.3d at 581, so *Armstrong* is of no help to him.

Thus, McWilliams has failed to state an individual capacity § 1983 conditions of confinement claim against Dart.

## B. Dart's Responsibility for Medical Treatment

In response to McWilliams's state law claim alleging that Defendants breached their duty to provide him with "adequate medical care," Doc. 73 at ¶¶ 144-54, Dart argues that he was not responsible for medical treatment, Doc. 79 at 11. Again citing *Despenza* and *Smith*, McWilliams counters that Dart is responsible because "[c]aring for the[] wellbeing of inmates is a primary concern for the Sheriff." Doc. 93 at 15.

Although McWilliams brings this claim under state law, the parties treat it as subject to the deliberate indifference standard. The complaint alleges "deliberate indifference," Doc. 73 at ¶¶ 144-54, and the parties' briefs cite only § 1983 cases, Doc. 79 at 11; Doc. 93 at 15; Doc. 94 at 5. By embracing the proposition that the state law claim requires showing deliberate indifference, McWilliams has forfeited any argument to the contrary. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted).

Under federal law, deliberate indifference is a subjective standard that requires a sufficiently culpable state of mind, "something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). The standard is satisfied only if the defendant had "subjective knowledge of the risk to [the plaintiff's] health and … disregard[ed] that risk." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 301 (7th Cir. 2010). Given this standard, the parties' dispute about whether detainees' medical care falls within Dart's purview is beside

the point.  McWilliams's barebones allegations that the "Cook County Health Defendants" "were aware" of McWilliams's injury and "showed a deliberate indifference" to his medical needs, Doc. 73 at ¶¶ 146, 152, do not plausibly suggest that Dart had personal, subjective knowledge of the relevant events.  Thus, McWilliams fails to state an individual capacity claim against Dart as to the state law medical treatment claim.

## V.    Ali

Finally, Ali contends that McWilliams fails to allege facts sufficient to support a claim against him for providing inadequate medical treatment.  Doc. 79 at 11-13.  As with McWilliams's conditions of confinement claim, his medical treatment claim arises under the Fourteenth Amendment's Due Process Clause and is subject to an objective reasonableness standard rather than the Eighth Amendment's deliberate indifference standard.  *See Miranda*, 2018 WL 3796482, at *9-12.  Here, too, if McWilliams succeeds in alleging deliberate indifference, he necessarily states a claim under the Fourteenth Amendment's lower standard.

A detainee bringing a § 1983 medical treatment claim "must meet both an objective and a subjective component."  *Pittman*, 746 F.3d at 775-76; *see Miranda*, 2018 WL 3796482, at *12 (noting that the objective unreasonableness inquiry still involves a state-of-mind component).  First, "the harm that befell the [detainee] must be objectively, sufficiently serious and a substantial risk to his or her health or safety."  *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006).  Second, the detainee must allege that the defendants acted with "a legally requisite state of mind … with respect to [their] physical acts."  *Miranda*, 2018 WL 3796482, at *12 (quoting *Kingsley*, 135 S. Ct. at 2472) (characterizing the intent inquiry as whether the defendants "acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of

their handling of [the plaintiff's] case").  Ali contests only the second, subjective element.
Doc. 79 at 11-13.

The deliberate indifference standard—which, as noted, is more than sufficient to satisfy the subjective element—requires "something akin to criminal recklessness" as to the risk of harm.  *Norfleet*, 439 F.3d at 397; *see Miranda*, 2018 WL 3796482, at *9 ("The 'deliberate indifference' standard … asks whether the official actually believed there was a significant risk of harm.").  Neither medical malpractice, nor negligence, nor even gross negligence suffices. *See Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006).  For medical treatment to be deliberately indifferent, it must have been "so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances."  *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998).  Put another way, the treatment must have been "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment."  *Norfleet*, 439 F.3d at 396.  If a "need for specialized expertise either was known by the treating physicians or would have been obvious to a lay person, then the obdurate refusal to engage specialists permits an inference that a medical provider was deliberately indifferent to the inmate's condition."  *Pyles*, 771 F.3d at 412 (internal quotation marks omitted).

McWilliams adequately alleges that Ali was deliberately indifferent.  The complaint alleges that Ali diagnosed McWilliams with a broken hand and told him that "proper treatment was unavailable at [Cermak Hospital] because of limited resources," that he needed to see a specialist, and that he would be granted a "medical hold" preventing his transfer to another facility until his injuries were treated.  Doc. 73 at ¶¶ 79-81.  Thus, McWilliams has alleged specific facts demonstrating that Ali knew he had a medical condition requiring specialized

expertise. The complaint further alleges that Ali failed to implement the very course of treatment he thought necessary: Ali "fashioned … a hand-made, plaster cast … without setting the bone," McWilliams was transferred to another facility two days later despite Ali's promise to ensure that he would not be, and he was not sent to a specialist until some two months after his injury. *Id*. at ¶¶ 80, 82-87. By the time McWilliams saw a specialist, so much time had passed that proper treatment would require "complex surgery" involving "re-breaking and re-setting the hand." *Id*. at ¶ 88. These facts raise the plausible inference that, contrary to his own professional judgment, Ali never actually referred McWilliams to a specialist or issued a medical hold. *See Petties v. Carter*, 836 F.3d 722, 733 (7th Cir. 2016) (en banc) (holding that evidence that the defendant refused to order the treatment recommended by a specialist could support a finding of deliberate indifference). That is enough to survive a motion to dismiss.

### Conclusion

The motion to dismiss is granted in part and denied in part. The § 1983 claims and the state law medical treatment claim against Dart in his individual capacity are dismissed with prejudice. Because Dart raised similar arguments in his motion to dismiss the second amended complaint, Doc. 65 at 7-10, it is safe to assume that McWilliams put forth his best effort in the operative complaint, and there accordingly would be no point in giving him another chance to replead. *See Agnew v. NCAA*, 683 F.3d 328, 333-34, 347-48 (7th Cir. 2012) (affirming the district court's denial of leave to file a second amended complaint, even though the claims had not previously been dismissed, because the plaintiffs "already had the opportunity to amend their complaint after being exposed to the [defendant's] arguments" via an earlier motion to dismiss); *Promote Innovation LLC v. Roche Diagnostics Corp.*, 793 F. Supp. 2d 1090, 1097 (S.D. Ind. 2011) (denying leave to file a third amended complaint where the plaintiffs had twice been

granted leave to amend "in the face of motions to dismiss," even though the earlier complaints had not been dismissed).

The remaining claims survive. Those include all claims against the defendants other than Dart. They also include the official capacity claims against Dart and the individual capacity state law conditions of confinement claim against Dart; Defendants' motion to dismiss does not address those claims against Dart, thus forfeiting any argument for their dismissal, at least for purposes of this motion. *See G & S Holdings*, 697 F.3d at 538. Defendants shall answer the surviving portions of the operative complaint by September 10, 2018.

August 20, 2018       /s/ Gary Feinerman
              United States District Judge